Counselor. I'd probably do better without him. Yeah, but you can't go forward without him. Hang on just a second, then we can go. Mr. Court, I'm Lynn Ashcroft. I'm appearing on behalf of Appellant Norton. Ms. Norton was the spouse and widow of deceased Specialist Bacon. They did marry. Well, they'd been married about a year, I think, while he was in Georgia in the Army. Prudential interpled the funds into court, and the issue is who should get the funds from the life insurance policy. He had been a member of the Army, left active duty in the Army. While he was in the Army, he married Ms. Norton, transferred to the Georgia National Guard, and then was in the National Guard. His file was either in transit or had just been received. He died a few weeks after he arrived here in a motorcycle accident, unrelated to his military duty. The issue came about when, after the death, Kimberly Norton came to Oregon, having learned of his death, and while in the military department, pursuant to their survivor assistance program, they pulled up his file or were getting the information. Coincidentally, at that time, Specialist Duren, who was the girlfriend of the deceased's brother, who happened to also be in the National Guard, learned that Ms. Norton was in the military department, learned that they were looking for Specialist Bacon's file, and said, by the way, Specialist Bacon executed a new SGLI beneficiary form before he died. They looked through the military department, had no record of it, had no copies of it. It's a three original document. One goes to the service member, one goes to the unit, one goes to the permanent file at the military department. As Duren said, apparently there's a copy at his home. She leaves, accompanied by another service member, retrieves this document, brings it back. It's the only one that's ever been found. The circumstances prompted Ms. Duren's supervisor, Colonel McRae, to initiate an investigation and author a letter that is attached as an exhibit in the record. In that letter, they compared the two SGLI forms and raised suspicions about whether or not one was a forgery or not. Colonel McRae, who was the person directly responsible for the administration of the insurance program, says in his letter, and later confirmed by Colonel Pritt, who was the chief of staff at the military department, that Ms. Duren, on the date in question, was not in duty status, was not supervised, and was not authorized to receive this change of beneficiary form. We submit that's very significant. That, again, as I indicated, was supported by Colonel Pritt, the chief of staff. Receive is an operative word here, both in the statute, the regulation, and the circumstance. But is receive in the statute? It is, Your Honor. There's a provision in it. But it doesn't say, the statute doesn't say receive by someone authorized to receive it. It says it has to be in writing before death. It says it has to be in writing. Received before death. Received before death. Right. Prior to death, by the uniformed services, if insured by the service man's group life insurance. Okay? Received is, therefore, I guess, may be open to interpretation, but certainly the regulation that has been enacted, which, in fact, has the force of law under the circumstances. Which the trial court didn't think was relevant. Apparently so. Because under that regulation, it has parameters under which an effective change must occur. Now, I submit to the court that that's important. I think and would submit that the trial court analyzed this maybe from a non-military approach, but it's certainly important in a military approach. Anybody that's been in the military knows that there is a valid basis for putting some guidelines on when and how you change a life insurance policy. You have young soldiers that are subject to influence. We have had circumstances historically in the military where commanders have influenced soldiers to make beneficiary changes. Other service members have had influenced soldiers to make beneficiary changes, naming themselves. And so the military enacted reasonable regulations that says, hey, if we're going to do this, and we're going to make it effective, and we're going to provide this insurance to soldiers, we want to make sure that it's administered properly. And we want to make sure that when a soldier makes these changes, it's a knowing, intelligent, thought out, and approved change. We can't tell a soldier who you can and can't leave it to, but we can make sure that that soldier receives necessary counseling and has time to consider the circumstances. Well, I don't want to interrupt you, but let's assume now that the change of beneficiary has to be received by someone authorized to receive it. Yes, sir. Let's go with the regulation. Okay. All right. Is it fair to say that Duran was not authorized to receive it, but that Frazier was authorized to receive it? Now, just stop with those two first. Yes, sir. Is that fair to say? No, sir, it's not. All right. Frazier would have been had it been done under the supervisory process. Well, I'm not asking under these circumstances. Okay. But was Frazier a person who would be authorized to receive it if she did? Only if acting under direct supervision. Frazier? Yes, sir. Frazier was a specialist. She was not a noncommissioned officer. I thought the summary judgment evidence was that she was authorized to receive it. No, sir. Only if she had been acting under direct supervision. What do you mean by acting under direct supervision? Do you mean on duty? On duty with a either noncommissioned officer or a commissioned officer who was in her supervisory chain that authorized the receiving. I will submit this, that Duran, if in a duty status, acting as a supervisor. Well, she was in duty status. No, she wasn't. Duran was not. Frazier was. I mean Frazier. Yes. I mean Frazier. Frazier was. Frazier was in duty status, and she would have been authorized to receive it, but you say only if she had someone else telling her she could do that. Correct. Now, here's the other distinction, Your Honor, about what's received. The military, and as you will note from Colonel McRae and Colonel Pritt, they both said the military department did not receive the change. Well, that's a question of law. Yes, that's right. Well, it's also a question of fact. It's who received it. And it may be a question of fact. And what I'm submitting to you is that even though this is a de novo review at this stage, that's the issue. That's a question of fact. You said you were about to say something about we went over whether Frazier was authorized to receive. You were about to say something with respect to whether Duran was. Duran would have been if she had been in a duty status, acting within the scope of her authority, and subject to supervision. Are you saying that Duran and Frazier were in the same position? Either one of them had to be in duty status and supervised and authorized in letters. Yes, sir. Yes, sir. These are not facts, but I'm trying to figure out sort of the boundaries of where we are here. What if, and I know this is National Guard, so I may not be quite right in terms of the hours, so go with me with a simple hypothesis. Let's say that Duran works a 40-hour week, Monday through Friday, and somebody wants to change the beneficiary. And she says, listen, I only work on Monday through Friday. I'm not on duty on Saturday. But listen, I'll come in on Saturday and I'll do it for you because I know you work. And she does it on Saturday. Now, in your view, is that not a proper change of beneficiary? It would have been if Duran would have called up Colonel McRae or any other direct chain of supervisory chain of command and said, can I do this? And if Colonel McRae would have said, yes, you can do it, or I'm putting you in a duty status for the purposes of doing it, then it could have been effective. Now, under supervision means more than just being under the supervision in order for a specialist like Duran or Frazier to change it. They have to have specific authorization for each change before they can do it? They have to have general authorization for each change. For example, the way it works. So in other words, she didn't have to call. Well, let's say it happened on Friday when she was just sitting there in the office. She doesn't have to call Colonel McRae? I believe they do. I believe they have to verify it with the chain of command. Correct. Now, what's your basis for saying that? Well, Colonel McRae primarily saying that they've got to be under his supervision. But under supervision does not necessarily mean I have to approve every change of beneficiary. I'll give you an easier example maybe for me to explain. Ordinarily, the way these changes occur is under two circumstances. Either when an organization is deploying. Actually, there's three circumstances. When an organization is deploying, and the organization goes through what we call a deployment readiness exercise, and the whole unit shows up, and all of these sections, the SGLI section, the administrative section, the medical section, the JAG section, all show up, and all the supervisors are there. And we know that each soldier is going to be asked about his SGLI to confirm or verify or to make a change. Clearly a direct supervisory circumstance. The other circumstance is when a soldier comes into a unit, he transfers in or is transferring out, they will review it with him. That is an official program. The third would be a soldier just wanting to make a change. What everybody in this organization says is that what Specialist Bacon should have done or should have been directed to do was go to his unit. He was a member of the 1249th Engineer Battalion. This was at the military department headquarters, which is the repository for these records. And so there really is, under these circumstances, I can't anticipate or envision any circumstance where Specialist Duren, short of calling up and getting a supervisor's authority to do it, or Specialist Fraser, short of asking a supervisor's authority to do it. Can I come back and ask you more pointedly? I understand what you've just described to me, but what do we have in the record that tells us that not only must Fraser or Duren be on duty at the time she enters the change of beneficiary, but that that change must have been specifically approved by a superior officer who is her supervisor? Because that's more than just under the supervision. That's a very tight little requirement. What we have is Colonel Pritt saying, PFC Duren. I'll read along with you. Page 14 of the brief, and it's the third paragraph. Which brief are we in, the red one, blue one? The blue one, Your Honor. Okay, I'm on the brief with you. Third paragraph that starts, quote, PFC Tiffany Duren was not a person officially designated by the Oregon Army National Guard or by Specialist Bacon's unit to receive official change of beneficiary designation forms on May 13, 2002. PFC Duren was not ordered, requested, or otherwise directed by a supervisory authority to prepare the change of beneficiary designation on behalf of Specialist Bacon on May 13, 2002. But that's it? That's it. That doesn't tell us what the regulations are. It just tells us what didn't happen. Correct. Here's my problem with this case. It's a tough case, and I don't know how I come out on it. I'm putting myself in the position of Specialist Bacon, and I'm looking at sort of the established doctrine of agency law of apparent authority. Under my hypothesis that may not be this fact, but, you know, Duren is authorized to do this Monday through Friday. She says, I'll do it for you on Saturday. She doesn't get the specific approval of her supervisor. She just does it. He gets the change of beneficiary through her, relies on that that is done. Six months later, he dies. She has, in his view, full authority, and I think under agency concepts she probably has apparent authority, although not actual authority. Why shouldn't we read this to allow a legally effective change when the person doing it has apparent authority? She doesn't have apparent authority. Now, apparent to whom? Prudential Insurance Company didn't give her apparent authority. Prudential Insurance Company didn't, and nor did the military department. If anybody told Specialist Bacon they are of equal rank, nobody told him, and there's nothing in the record that says anybody other than Duren said to him, I can do this for you. You can't create your own apparent or express authority. Under these circumstances, is this court satisfied that, in fact, Bacon did sign this change of form? We have Fraser saying it. We have Duren saying it. They are friends. One is the girlfriend and the other is the brother. It says it looks like the same. It says it looks like it, but it's not conclusive. Now, the other issue is are you satisfied that he did this of his own free will, knowingly and intelligently, and intended it to make a change? The original is not in the file. Why is that? We don't know. The original is not at the unit. Why is that? We don't know. The only copy we have is one that Duren says I got from his home. And we know, I think, that she did because she goes out there in the company of another military person. Who didn't go into the room, but Duren comes back with it. Yes, sir. The question is did Bacon intend that that be effective? There is evidence in the record that he didn't want his parents to know he had gotten married. There is evidence in the record that there was some strain there about that circumstance. You can take this to, if you want to argue hypotheticals, he's at home. His parents find out he's married. They're not happy about it. Duren talks about the life insurance, whatever. He goes down, okay, I'm going to make my parents happy. But we don't know. All we know is what the record is. And the record is there is nothing to prove that that document was received or the change was effective according to military rules, regulations, and according to the statute and the insurer's own guidelines. And that's the issue. But I submit to the court you don't have to decide whether or not one side wins or loses because what this case is, we're here on, is a summary judgment about whether there were facts in dispute. And there are facts in dispute. That fact being, which a judge or jury at trial should decide, was Duren authorized and did the government receive an effective change of beneficiary law? Why aren't those questions of law that the court can simply rule on, on summary judgment, once it's received appropriate testimony by deposition or declarations to see whether there really are contested issues of fact underlying a legal conclusion? Well, because I think they are fact issues. I mean, it is, were you authorized to receive it? Duren says yes. A colonel says no. Did the government receive? That's a factual dispute. I don't think that's a question of law. Well, but, I mean, you said earlier that a person can't create her own authority if the regulation doesn't give it to her. Correct. And on it properly presented with the regulation and perhaps with an explanatory declaration as to the underlying facts by her commander, I mean, I can conceive of a situation where the district court might say there really isn't a material dispute over the facts. Here's what the regulation says. Here are the circumstances under which she might have been authorized or not authorized. And I find as a matter of law she wasn't authorized. Well, the court suggested in its findings that somehow the presence of Frazier, who was on duty and authorized to prepare and receive the beneficiary forms as a basis for the court's conclusion that Frazier was supervising. Frazier is not an officer. But was Frazier, if a member of Frazier's unit had walked into her office that day to make a change of beneficiary form, wouldn't she have been authorized to do that for the soldier? Well, no, because she was working at the military department headquarters, not at her unit. So she just processes the papers? She processes the papers. She doesn't actually meet with soldiers who want to execute the change? She will, and she can. But if a soldier came into her and says, I want to make the change, her role would have been to say, you need to do it through your unit. Now, her unit might very well have sent them there, or the unit might send them there later. But the process is to change it at the unit, the 1249th engineers in this particular case. And so, again, if a soldier came in out of the ordinary course of business and said, Specialist Frazier, I want to make a change of beneficiary form, and there was either some exigent circumstances or there was a reason that she couldn't send them to their unit, say their unit was in eastern Oregon as opposed to Dallas or Salem, and there was a reason that this soldier was deploying, then, yes, Frazier could have, but she would have had to get approval from her supervisor to make that decision. She does not have the ability to make a decision on her own. I assume you're telling us all this sands the record, because I didn't see any testimony or affidavits to what you just said. Are you kind of filling us in on how it works? Is that what that lasts for? Yes, sir. Okay. Well, now, it may be that Colonel Fritz's affidavit disabuses my idea  but if Duren had, if Frazier had the authority to receive the change of beneficiary, what I remember, what I saw in the summary judgment record that I had reference to, I haven't seen the record itself, was simply that the papers were executed in her presence. Yes, sir. But what does that mean? Does that mean she knew what was going on? I don't know what Thomas's affidavit is really worth, but what is the best and most complete evidence in the summary judgment record about what Frazier actually knew and how she participated in this that she didn't sign anything? I think the best evidence, frankly, of what she did and what she knew is from Duren and Frazier themselves, where it is that Duren prepared the document, as I understand it. Frazier was merely a scrivener taking directions from Duren and allegedly Bacon, where she printed out a form that she says Bacon then signed. I thought Duren prepared the form on that. Well, it may have been on Frazier's computer. But Frazier participated in all this? She was there. Where? In the military department, but she didn't sign anything. In the physical room? She was physically in the room with him. But if you take that a step further and said, well, did Frazier receive it? If she was going to receive it, she better have taken that original and put it in the soldier's permanent 201 file. There's a box on the form that says received, and that's signed by Duren. Correct. That's right. Not by Frazier. Thank you. Thank you, Captain. Let's hear from the other side, and we'll give you a minute or so in response. Good morning. I'm Ed Swearinger, representing the appellee Bacon. Of course, it's our position that the district court was correct in ruling that the beneficiary designation form had been received based on the facts. By whom? Pardon me? By whom? By the military department. Okay, but by what actor? By Duren's receipt. By Duren? By Duren. What do you do about the fact that the colonel says she wasn't on duty and she wasn't authorized to do what she did that day? Well, one of the issues, I think, is that whether or not the regulations require that she be on duty. The regulations, they do not speak to that. That is apparently a company policy or a National Guard policy, and that's all that McCrae's letter says. But we're dealing with the National Guard, and as I understand it, she was a, what do they call them, a temporary soldier? Temporary service. Temporary service. So that means the only time she's on duty is when she's officially instructed to report for duty, which typically means one weekend a month and 15 training days a year. So is it your position that she can put herself on duty by simply showing up as a courtesy to Bacon to help him fill out a form because she's dating his brother? No. Okay. No. Well, how can we say that she was authorized to receive it when the officers say she was not authorized to receive it? What summary judgement proof is there that she was authorized to receive it during? Well, the record indicates on both from, I think, actually from Colonel McCrae, is that she was not authorized to receive it. Right. Okay. Our position is whether or not she was authorized to, in fact, authorized to receive it. She, in fact, did receive it. Now, she may have violated Army regulations, but that shouldn't be held against Mr. Bacon when he went into the Guard unit that changed his beneficiary designation. That should be the court's, really, the basis of the court's inquiry here is whether or not that beneficiary designation form accurately represents his intent. Can't the Army or an insurance company prescribe exactly what's required before they change the beneficiary and pay out? I didn't hear the first part of your question, Judge. I'm saying isn't it the prerogative of the Army or a prudential insurance company to say you have to do this and that in order for us to pay out to a new beneficiary? Yeah. The regulations provide that a new, what's an SLG, SGLV 8286, which I refer to as a beneficiary designation form, has to be in writing and received. By someone authorized to do so. It doesn't say that. The regulations do. No, they don't. Do we have a copy of the relevant regulations so I can see what the regulations say and don't say? On my supplemental exhibit of record, I think it begins at page 3. I've got excerpts of record. I'm not sure I brought to the bench with me supplemental excerpts of record. Which regulation are we talking about? One I've got in Title 38 of the United States Code, and then I've got the Army regulation. So which reg are we talking about? We're talking about Army regulation 600-8-1. All right. Unless it is received by OSGLI, the custodian, or authorized representative. By the OSLGI. So what paragraph are we reading? I don't know where the judge is reading from. From what you just said, 600-8-1, Section 11. What? Section what? Section 11, 31E? 31E. Okay. We're with you now. Well, but that's talking about prior to payment. Well, it's talking about when the designation is valid. Yeah, I think the rule that we're talking about here is that the beneficiary designation form is supposed to be received by the member's unit prior to his death. Subsequent to that, of course, the OSGLI isn't going to pay unless they get that. Okay. Help me translate these terms. Unless it is received by OSGLI. Who's OSGLI? I mean, I'm accustomed to referring to this as OSGLI insurance, but who is or what is OSGLI? I think that's the Office of Servicemen's Group Life Insurance. That is not the military department. That's the federal. Okay. The custodian of the MPRJ. What's the MPRJ? No, I'm asking him. Sorry. That's the individual soldier's personnel jacket. Jacket. Oh, the custodian of the jacket. Yes. Okay. So are you arguing that the custodian of the jacket received it? Well, at the point in time that this transaction occurred, there was no Mr. Bacon had no jacket that was present in Oregon. So the answer is no? The answer is no. So, or authorized representative prior to payment. Are you arguing that, I mean, so it wasn't received by OSGLI, wasn't received by the custodian of the jacket. I guess you're left with authorized representative. Yes. So you're arguing it was received by the authorized representative? Of the Army. But then, unfortunately for you, you've got the word authorized in there. Yeah. Oh. So all you have to do is execute that form, and then we find it after the death, and then we know who the beneficiary is. We don't know who the beneficiary is until after the death.  Yes. Now, the court asked, had some questions about the effectiveness of Sergeant Thomas's affidavit. I think the relevant facts are, in this case, and the undisputed facts were that Mr. Bacon appeared with Duren, and in the presence of Frazier, executed three of these originals. Now, admittedly, after those were executed, the policies were violated, the forms were given back to the soldier, and he took all of them with him. That's very parallel to the Perez case in which virtually the same thing happened. We know that won't hurt you. Okay. So whatever happens afterwards doesn't matter. So that's why we're at this issue of receipt. You know, I think that I disagree with opposing counsel's conclusion that Specialist Frazier would not have been authorized to receive this. I think Sergeant Thomas's affidavit says that she was. If she had been on duty, she was on duty. She witnessed the preparation of the receipt, saw Bacon sign this, she knew who he was, and that should be sufficient to adequately provide for the receipt, you know. It doesn't make a difference that she didn't sign the little box that says receive by. Not in my view, it does not. She was there, she saw it. She was in her normal course of duty. She would have been authorized to prepare and receive it. What's your response to the argument we've heard that in order for a proper change of beneficiary to be received, the procedure according to the regulations is that somebody like Duren or somebody like Frazier who are enlisted, they've got to get the specific permission or authorization from the commanding officer. Is that right? No. I don't think that's the case at all. And I asked for evidence. From the other side of this point, all I got was a statement as to what she didn't do in reference to a regulation. Do you have anything back to me? I don't think there's anything in the record that says that answers that question. From talking to the defense, Frazier and Duren, I have a general knowledge of how that works, but it's not in the record. Does that mean that the record is deficient in the way that could be filled out if it actually went to trial? I mean, we're here at summary judgment. Yes. My position is in the final analysis of the thing, that's not going to make any difference at all. I think what matters here is that, as Colonel McCrae says, it's guard policy that was violated by Duren. Well, a violation of policy by the soldier should not affect the – ambitiate the validly expressed intent of the soldier to designate his own beneficiary. Now, the magistrate judge writes in his order, and I'm on page six of his order, it's on ER 118, that Specialist 4, SP4, Marianne Frazier, an off-duty officer authorized to prepare and receive change of beneficiary forms was present. While Duren prepared and Brian executed the current election, the presence of an off-duty authorized officer during the preparation and execution adequately protects – Now, the other side takes some issue with the characterization of Ms. Frazier as an officer. What am I supposed to do with this? Frazier as an off-duty officer? The other side says she wasn't an officer, she was a Specialist 4 class. That's accurate. So she's not an officer. No. So she's not an off-duty officer authorized. She's an off-duty person who may be authorized. No, she was an on-duty person. She's an on-duty person, but not a non-officer, may be authorized? Say that again. Excuse me. I should come up to the mic. So she's an on-duty non-officer, perhaps authorized to do this, authorized to do this? She's an on-duty specialist that when she was on-duty was authorized to do, to prepare and receive the beneficiary designation forms. That's what Sergeant Thomas' affidavit says. But now Colonel Fritz said the contrary. No, he doesn't say the contrary. So isn't that what Mr. Ashcroft read to us? No, we're talking about Frazier, I think, aren't we? That's what I intend to be talking about. Yeah, yeah. And so what he was reading to us replied to Duren. Yes. So the only difference between Duren and Frazier is that Frazier was on-duty. Yes. Otherwise they'd have the same authority. Yes. I think their military jobs were the same. They were in the records division. When they were on-duty, that's part of their duties. Both of them were authorized to prepare and receive these kinds of documents. For their unit or for the entire Department of the Army? I thought I heard your proposing counsel suggest that the reason this didn't comply with the Army regulations was that even if Frazier had been authorized to accept change of beneficiary forms that day and it was filled out in her presence, that it would have to be somebody would have to specifically authorize a member of another unit like Bacon to come to her office and complete the form at military department headquarters. I don't think that's not part of the record, no. I mean, the... Well, I mean, wasn't Duren's normal duties when she was on-duty to handle this sort of paperwork for the members of her unit, whatever it was? Well, the members of her unit or as counsel represented, when there's a mobilization, they did it for other units. Soldiers would come in and they would... But this was not a mobilization. This was not a mobilization. This was an extraordinary situation. They just showed up. Right. One of the regulations, and that's I'm referring on Supplemental Exhibitor Record 3, that's 11-31 again, in the paragraph C that says, Any soldier who wishes to change beneficiaries as is on authorized leave, TDY, approved administrative absence, and cannot report to the custodian of his jacket may go to the nearest Army ARNG or USAR installation. Also, these regulations... Was he on authorized leave, TDY, or approved administrative absence? He was somewhere between Georgia and... I would say he was more in transition than perhaps any of these. I point this out only to show that there's some leeway here for him to go to another unit. I would also point out... Some leeway. I mean, the problem I'm having, and I think my colleagues are having the same problem, is the Army regulations are very specific, and the case law seems to suggest that they're specific for a reason, and that is to protect soldiers from, shall we say, ill-advised changes in beneficiaries and undue influence in doing so. The problem here is that you're asking us to bend the regulations a little bit because of the unusual facts situation we have before us. I don't know how far we can go in that regard. If the intent is to rigidly comply with the regulations in order to protect the beneficiaries from ill-advised changes. Well, I think part of the intent and what the court's basic inquiry should be is what was the intent of the soldier here. I mean, he attempted to comply and do what he needed to do. He did what he was told to do. The fact that the Army personnel didn't follow their own regulations shouldn't be used against him in his choice of beneficiaries. What exactly do we know about what Fraser did? Only what's in her affidavit. I'm asking you what that is. She was present. She knew who Baker was. What does that mean? She was sitting at the desk next to where they were working. She saw him sign. She knew who he was. She knew what the form that they were preparing was. She says that, I observed an individual who I'm new to be, Brian Bacon, signed three original service members, group life insurance, election and certificate forms, which had been prepared in my presence by PFC Durham. We attached a copy of the form which she identified as the one that she saw him prepare. And she doesn't explain, does she, what her normal practice would have been? I mean, presumably she's supposed to keep at least one, if not more, of the copies when someone comes in to execute such a change in her presence. I mean, isn't it odd here that Bacon was allowed to take the whole form back to his house? It's definitely a violation, I think, of procedure. The procedure calls, I think, for the, if I recall correctly, the regulations. A member gets one, one goes to finance, and one goes someplace else. But she doesn't offer any explanation as to why she didn't follow procedure. Why Frazier didn't follow it? Right. Well, she was not the, Durham was the one that did the preparation. I understand, but there's no explanation by either Durham or Frazier as to why the Army procedures on handling the copies weren't followed. Well, I think the only one is, is at the time the document was prepared, there was no, the MPRJ jacket available. Had he been given the MPRJ? Was it later found in his residence? No, I think the MPRJ was in transit from Georgia to Dallas. So they didn't do what they sometimes did, I guess, during one of the cases I read during the Vietnam War, where they actually would give the personnel jacket to the soldier to carry with them to his next duty station. No. Actually, I can answer that for you. I'm reading from Ms. Durham's affidavit. She says, Brian Bacon did not have personnel file with the Oregon National Guard because he was transferring, so I returned all three original election certificate forms which I had prepared and which he had signed to him. Yes. So she gave it to him. In a sense, it was this, you know, okay, we don't have a jacket to put him in, so she says I gave all three of them to him. Right. And one of them shows up in the bedroom. The other two, I don't know. And what is the marital status? Was Ms. Norton still married in the eyes of Georgia law to Mr. Bacon at the time of his death? Don't know that. We don't know that. Don't know that. Do we know if they were ever married? At some point in time, a marriage certificate was produced. I don't think it's relevant to the issues that we have here, Judge. Mr. Bacon can designate anybody he wants as a beneficiary. Well, wouldn't it be relevant if we find for some reason that this change is, this change in beneficiary form did not comply with the regulations, isn't there some statutory or regulatory preference as to who then gets the, who is the beneficiary? Does it go first to the spouse? Yes, I think that's correct. Okay. You know, I'm from San Francisco and so I'm more conscious of this, but I suspect it was national news. When Barry Bonds hit, I forget which home run it was, 348th or some darn home run, there was a fight in the stands as to who got the baseball. And two guys fought over it. And they fought over it. And there were various suggestions as to maybe they could compromise. And there was a problem in splitting the baseball because if you cut the baseball in half, it's not worth as much. Well, if you cut money in half, it is worth as much. Have we talked settlement in this case? Yes, we have. We went through the settlement conference procedure. All right. Thank you very much. Thank you, counsel. Would you like a minute in rebuttal? Just real quick. Hang on a second. There was a prior SGLI form that named Kimberly Norton as the beneficiary. So if this SGLI form is found not effective, it would revert to that one. But she was the spouse of the individual. How do we know? Is that in the record or are you just telling us? I think it is in the record. Well, I'm sorry, I can't tell you that. But it is in the record that there was a prior SGLI form designated. That much I know. But I looked in the record to see about a marriage, even though I think it's irrelevant to the legal issue. I couldn't find it. The other aspect I would ask to emphasize is that counsel has stipulated before this court today that they're relying upon Duren receiving, not Frazier. Really? Well, he told you that when asked the question, he said that their position is that Duren received it, not Frazier. They're not contending Frazier received it. Can we accept this as the dispositive response and that Frazier's role is not to be considered as the receipt of the change of beneficiary? I don't think he intended to say that. He didn't? Okay. I'm going to stipulate that he didn't stipulate. All right, look at Frazier's affidavit. But their contention, his contention was that Duren received. Duren signed it. She checked it. Frazier didn't. And I would just again refer the court to the section quoted by Your Honor 1131 sub e, which states what makes an effective change. Thank you. Thank you. Let me ask one more. Let me go back to that question of Frazier as distinguished from Duren and whether or not under Colonel Fritz's affidavit or any other proof, Frazier had to have more direction in order to be authorized to receive it rather than just being on duty. Well, Your Honor, the problem, I say yes. The problem I have with even raising the issue of Frazier has never been raised before. They have never contended that Frazier received it. All they've ever contended was Frazier was a witness. But counsel did say that Duren and Frazier had or exercised the same level of authority. And although Frazier was never specifically addressed because that issue was never raised before, I think that you could by implication and analogy use Colonel Fritz's statement of what Duren authority was. Thank you. Thank you. Thank you. Thank both counsel for a helpful argument. This case is now submitted for decision. We're in adjournment for the day. We will reconvene tomorrow morning at 9 o'clock. Thank you very much. All rise. Court is adjourned.
judges: Reavley , W. Fletcher, Tallman